May it please the Court, Lawrence Rolfing on behalf of Michael Ogin. I think that's how we pronounce his name. Okay. In this case, Mr. Ogin was examined by a psychologist selected by the state agency acting on behalf of the commissioner and by a psychologist that was actually treating him. The treating and the examining psychologists arrive at relatively similar conclusions that Michael Ogin lacks the ability to engage in work activity. And the only really contradictory hard evidence that we have are the notes of a physician's assistant. Physician's assistants work in tandem with doctors, and Taylor tells us that physician's assistants' notes are really only substantial when they're signed off by the supervising doctor. And so Mr. Gutsman's findings and opinions, which are inconsistent with his treatment choices, don't rise to the level of substantial evidence when the two professional psychologists that are recognized as accepted medical sources tell us that Michael Ogin has substantial impairments. And the commissioner makes significant weight out of Dr. Hawkins, who's the consultative examiner, finding that Mr. Ogin had what the commissioner would like to describe as poor effort. But what we really have is poor performance, and that's at record 422. Mr. Ogin is all over the place. And to the extent that Dr. Hawkins did, in fact, make mention of an effort-based revolutional presentation, we know that the psychologist took that into account because he wrote it in his report. Yeah, but that's what, I guess, to me is the closest question here is, sure, we have a trained professional who says, I recognize that this person, I don't think I agree with you that it's performance versus effort. I think it was a suggestion on Dr. Hawkins' part that I don't think this guy is giving it his all, for whatever reason. Maybe he's trying to influence my evaluation of his abilities, maybe not. But I don't think this guy is giving it 100%. Notwithstanding that fact, and I've sort of somehow factored that into my evaluation, I come to the conclusion of X. Why can't an ALJ say, you know what, I just don't, I can't put much weight on the results of that evaluation because how was this psychologist supposed to be able to factor out the poor effort or whatever you want to call it from his final conclusions? Maybe I just can't, you know, I just don't find that, I find all of the results from that evaluation tainted in some fashion. Why isn't that a specific and legitimate reason for discounting the weight of that person's opinion? As a matter of expert witness and expert presentation on how we instructed juries in general, an expert's opinion is only as valid as the data upon which that expert launches forward into their analysis. So if the consultative psychologist had said nothing about poor effort, nothing about poor performance, nothing about, and was just completely bamboozled by this relatively unsophisticated man, and the doctor said, and everybody else that reviewed it said, well, these are inconsistent results and this is really indicative of poor effort and we've looked at other things and he has a history of poor effort that isn't in this record, and Dr. Hawkins didn't blend that into the mix and didn't put that in his blender of analysis, then that would be a specific and legitimate, a very good reason for rejecting the consultative examiner's opinion. But when the doctor says, I have considered his presentation, I have considered both his erratic behavior, his need to be dragged back onto task, his history of reading on a regular basis, but his poor performance on the TRAILS-B, which is just alternating A1, B2, C3, and he can't do that. I've taken all of that into consideration, and given everything that I have in front of me in terms of my professional evaluation, this mixed bag, these are my opinions. The ALJ concluded that Dr. Hawkins, who's not related as far as I know, were inconsistent with, quote, contemporary findings in treatment notes. Did she ever identify what those contemporary findings in treatment notes were? I think the best answer to that is that taking the ALJ decision as a whole, that ALJ is pointing at Mr. Gutsman's physician's assistant notes, because that's really the only treatment notes that we have. But she didn't identify any, quote, contemporary findings in those notes, did she? Did not. Okay. Did not. The other significant- If we were to reverse and remand, why wouldn't we then want to suggest that the record be further developed rather than, as you suggest, just accept as binding the opinions of Dr. Hawkins and the other doctor? Well, let me put on my hip waders and wade into an intra-circuit conflict. If the ALJ did not articulate legally adequate reasons for rejecting either the examining or the treating psychologist's opinion, the court has discretion to credit that opinion evidence as true, and if the result is clear, to make an immediate award of benefits. But just to take the example that Judge Hawkins just referred to, she says she found some inconsistency. She doesn't identify it. At a minimum, we would want to give her the opportunity to, and maybe there's something we've missed there that she can point to that would show that there was an inconsistency. So, you know, why in the world would we want to say that you should be precluded from, you know, further development? The case of Moisa, M-O-I-S-A- That's always the appellant's preferred position, is I would like my client to prevail. But I think the better answer is that I would like my client to prevail now rather than two years from now. And that really is, I think, the animating factor in the discretion of the court, is when we have the examining and the treating psychologist flying in tandem, is there a sufficient doubt or a serious doubt or any significant basis upon which the court should exercise its discretion to remand for further proceedings? Your Honor, I submit that the notes of a physician's assistant who's consistently saying, this individual denies depression, denies anxiety, and then in the assessment consistently is diagnosing the presence of a generalized anxiety disorder and diagnosing psychotropic medication that Dr. Krall-Cotrone is pointing to, this person is taking psychotropic medication. In those, taking everything as a whole, viewing the record as a whole, the inconsistent notes of the physician's assistant are not substantial evidence. And so I would urge that the court exercise its discretion under the statute because the statute gives this court discretion to reverse, modify, with or without further administrative proceedings. That's a statutory construct, and I think that that statutory construct is a patent grant of discretion to the court. Absent any further questions, I'll wait for the government. I'm sure you'll have something to say in response to the Commissioner's argument. Thank you very much. We'll hear next from the Commissioner's Council. May it please the Court, good morning. Henry Chi on behalf of Carolyn Colvin, Acting Commissioner of Social Security. The issue in this case is whether substantial evidence supports the ALJ's finding that Mr. Ogin can do two things, simple routine tasks and occasionally interact with the public. And before I go further, I'd like to address Dr. Hawkins' opinion. Council refers to Dr. Hawkins' opinion as just reflecting poor performance, but if you were to look at his actual opinion, he notes in numerous places that Mr. Ogin was not giving his best, that the actual scores are an underestimate of his abilities. And there's, if we look through all the various tests. But he didn't conclude that therefore he is malingering to the point that I can't make a diagnosis. So he's right there. He's the doctor on the spot. He's seeing the man. He's seeing the guy's reactions. He factors it all in, and he makes a professional conclusion. Why should the ALJ be in a position of saying, oh, I know better. I'll discount this altogether because he wasn't giving his best. Your Honor is correct that Dr. Hawkins didn't make his analysis based on Mr. Ogin's performance, but the ALJ is entitled to review Dr. Hawkins' opinion, and the ALJ disagreed with it because of Mr. Ogin's poor effort at the examination. But the ALJ also wasn't just playing doctor here. He also relied on the two independent opinions of state agency physicians who are experts in disability analysis. And those two physicians also reviewed Dr. Hawkins' records, and they said because Mr. Ogin was not cooperating well, the results are just not valid, and we can't really rely on them. Did the ALJ identify ways in which the opinions of Dr. Carl Cotrone, that's the way I'd pronounce it, were internally inconsistent? The ALJ. Can you start with a yes or no? Yes, the ALJ does identify the inconsistency. I believe in the ALJ opinion. The ALJ doesn't exactly outline the inconsistency, but the ALJ does say that the two checklist forms submitted in April 2009 were internally inconsistent. In what way? So. What way does that she identifies? What way that the ALJ identifies? The ALJ doesn't specifically identify why the checklist. So the answer to my question is no. Correct? Correct, Your Honor. The ALJ doesn't say. What's so hard about saying that? I think the ALJ did not explain exactly why the checklist were inconsistent. I asked you if she identified specifics, and you said yes. And in responding to my colleague's question, turns out the answer is no. What do we make of that? If I may, Your Honor. So what I'm referring to, I'm looking at ER-22, which is the administrative record number. She said, I give no further. Her report is internally inconsistent. The mental assessment form does not match the evaluation for mental disorders assessment. So the ALJ does say that these two forms are inconsistent, and that was what I meant to say, but she doesn't get into the nitty-gritty of why these two forms are inconsistent. But when you compare the two forms, you can see that some of the check marks are inconsistent. Criticized Dr. Catrone for using a checklist, but accepted the checklist from Dr. Paxton, correct? Correct, Your Honor, but Dr. Paxton also did review the record. And Dr. Catrone did not? So the issue with Dr. I have a yes or no to that. We don't know. I don't believe Dr. Crawl-Catrone actually reviewed the entire record that was before Dr. Paxton, because that record included Mr. Guzman's treatment notes as well, as well as other medical records. And most, I would think, Dr. Crawl-Catrone maybe had her clinical notes that she could have reviewed, but she did not look at the same thing as Dr. Paxton. And then I'd like to briefly address the credit as true issue that was brought up here. I know that since submitting my brief, the Ninth Circuit has issued some decisions on the credit as true rule, specifically Tricler, Garrison, and Burrell. And I think they generally stand for the proposition that the ordinary remand rule applies, and in rare circumstances, this Court could credit as true and remand for payment and benefits. But based on those cases, I think crediting it as true would be not the proper remedy in this case if this Court finds against the Commissioner. First off, I think remand would be appropriate here, because further proceedings would be useful, as Your Honor had mentioned, to the extent that Dr. Crawl-Catrone's opinions and clinical records are important to this case. Perhaps remand would be appropriate to further develop the record. And counsel has made the claim that Dr. Hawkins's opinion and Dr. Crawl-Catrone's opinion are actually in tandem. But that's not the case. Dr. Crawl-Catrone actually agreed with the ALJ that Mr. Ogin could engage in simple routine tasks. She only found a moderate limitation in that ability, versus Dr. Hawkins basically opine that Mr. Ogin could not do those tasks. So that would create a conflict in the record that should be remanded for ALJ to decide. The second reason that remand would be inappropriate is, based on these cases, there are serious doubts as to whether Mr. Ogin is actually mentally disabled. He's alleging a disability onset date as of December 1, 2000. But when we look at the record, the first time that he sees a mental health professional is Dr. Crawl-Catrone in, I believe, March 2009, so over eight years later. So it's unclear to what extent his disability is. And the last reason I don't think a remand would be appropriate here is that substantial evidence did support the ALJ's decision. Here, the ALJ relied on the opinions of state agency physicians, and the ALJ is entitled to do that as long as he gives as long as there's other substantial evidence in the record. And here, the other evidence in the record is the only contemporaneous treatment notes for Mr. Gutsman. Additionally, as the record shows, Mr. Ogin's daily activities suggest that he could do simple routine tasks and occasionally interact with the public. With regards to simple routine tasks, he's able to read during the day. He was able to study for a driving exam for a few months. He's able to do basic chores. And he also told Dr. Hawkins that he worked in construction in 2003, despite alleging disability in 2000. With regards to his ability to interact with the public, his daily activities show that he can engage in the ordinary incidental contact that you and I engage in every day. He is able to ride his bike during the day, take the bus. He's able to catch the ride from someone, go to the grocery store. And he even told Dr. Hawkins that he had a girlfriend for six months. So if there's any further questions, I'd be happy to. Roberts. Let me just maybe I'm not what you said didn't sink in. But I guess I understood our case law to say that if we were to find that the ALJ did not give specific and legitimate reasons for rejecting Dr. Hawkins' opinion, right, we would then have to credit as true the opinion that Dr. Hawkins offered. And I guess if we were to do that, I don't know what more would need to or could happen on remand to deprive the claimant of benefits. Because it seemed like the limitations that Dr. Hawkins' conclusions would build into the, you know, to what work the claimant could do are so, would be so severe that there basically would be no work out there. So why wouldn't the right remedy here be just to remand for an award of benefits? I know you just addressed that, but it just didn't sink in. So take another run at that. Correct, Your Honor. So if we were to look at Dr. Hawkins' opinion, his opinion, first off, does not address whether or not Mr. Ogun can interact with the public. His opinion only addresses one prong of the ALJ's finding as to whether or not Mr. Ogun could engage in simple routine tasks. And he held that. He found that Mr. Ogun could not. But what I would ---- And if we credited that opinion as true, are you really saying that there's work out there that this claimant can perform? If we were to credit that opinion as true, there wouldn't be work. But the issue here is that crediting that opinion as true would still create a conflict in the record, because Dr. Kral Katron, the treating physician, actually opined that Mr. Ogun could engage in simple routine tasks. I see. So an ALJ would have to resolve this conflict. Which doctor should I believe in? Should I believe in the treating physician, per the regulations, or Dr. Hawkins? And that is why a remand for further proceedings would be necessary. But I do think the ALJ did give specific and legitimate reasons. Right. Got it. Okay. Thanks. That was helpful. Thank you. Any further questions? We request that you affirm. Thank you. Okay. Thanks very much. You have plenty of time left for rebuttal, so we'll be happy to hear from you. I'm probably in the hole in terms of owing the court time, so I'll be brief. Over the course of your career, is that what you're saying? Sometimes we start with a blank slate. The only thing I think that really deserves comment is the idea that Mr. Ogun could perform simple and repetitive tasks. And the statute requires and the state agency completes a mental residual functional capacity form. That's at exhibit page 508 and 509. There's 20 different things that go into formulating a residual functional capacity. And I took off my glasses, and now I can't see my own iPad. It's understanding and memory, sustained concentration and persistence, social interaction, and adaptation. And it's not a simple analysis of looking at, well, he can understand, remember, and carry out simple and repetitive tasks with some limitations. There's getting along with coworkers and supervisors and sustained attention and concentration. It's a multifactored analysis, and that's what Dr. Hawkins is describing. That's what Dr. Krall-Cartan are describing. And that's why this court should order the payment of benefits. Well, just to address directly counsel's statement, that there's actually a conflict between the opinions of the two doctors on your side of the case. Is that correct? As to whether the claimant can perform simple and repetitive tasks, I think it was the term. The opinion of Dr. Hawkins, let's see, he says that the claimant can understand, remember, and carry out simple. To carry out simple, I'm sorry, complex instructions is poor. Simple instructions is marginal to poor. To maintain attention and persistence is poor. And that's at 425. Right. And your opponent has said that the other Dr. Krall, I can't say her name. Right. Right. Came to the exact opposite conclusion on that particular point. Dr. Krall-Cartan indicates moderate limitations in the ability to understand, remember, very short and simple instructions, that's at 478. And then at 479, to carry out very short and simple instructions is moderately limited. The test that the commissioner imposes as an overlay is the not inconsistent standard. And if Dr. Krall and Dr. Hawkins are describing opposite sides of the same coin, the conclusion is still the same. We don't expect physicians looking at a patient or a claimant on different days to come to the exact very same conclusions. There have to be minor variances because we all bring our own biases and prejudices and experiences to the table. And the claimant, especially in a mental impairment, is waxing and waning and varying depending on the face of the patient. But your adversary says that the bottom line is that one of the doctors says that your client can perform simple tests and the other doctor says that he can't. Why isn't that a material inconsistency that needs to be resolved and remit? Because they agree on other aspects that are preclusive of employment. The things that the doctors agree upon are... If we look at Dr. Krall-Cotrone's opinions and findings, and we come to the conclusion that this report or these three reports direct a conclusion or, if credited, require a conclusion of disabled, and we independently look at Dr. Hawkins' report and come to that same conclusion, and then comparing them, there are some differences, some significant, some insignificant differences between the two sources of medical opinion. Resolving the conflict between the two when the ALJ didn't do that the first time, I think, would be an abuse of discretion. The doctors agree on the ultimate conclusion that this person is so impaired that no reasonable person would suggest that he could work. On a different point, is there anything in Ninth Circuit law that precludes us from remanding for further development because we find that the ALJ wasn't specific enough? It's not that we're finding that the ALJ was wrong and, therefore, we must credit the examining doctor or the treating doctor. It's that we're not in a position, based on what the ALJ said, to know whether she was right or wrong. And wouldn't that be, under Ninth Circuit law, an appropriate basis for remand? The answer to your question is, yes, there are cases that support that position, and there are cases that come to the opposite conclusion. It's the intra-circuit conflict that we discussed earlier. Oh, I'm shocked to hear that, of course. Judge Hawkins has trained me well to answer the question with a yes or no first and then explain myself, so that's what I'm trying to do, and being honest with the court. There are cases that go both ways. I have nothing further. Okay. Thank you very much, counsel. Thank you. I appreciate the arguments on both sides, and the case just argued will stand submitted.
judges: Rakoff, Hawkins, Watford